## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

UNITED STATES OF AMERICA,

                Plaintiffs,

     vs.

WESLEY CAMERON,

                Defendant.

**8:13CR319**

**MEMORANDUM AND ORDER**

This matter is before the Court on the request of the defendant seeking compassionate release.  Filing No. 158.  The Defendant seeks a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) as amended by Section 603 of the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018).  The Court stayed the motion for 60 days, Filing No. 161, and ordered the defendant to file proof of exhaustion. Counsel then made an appearance for the defendant.  Filing No. 163.  Proof of exhaustion was filed by defendant's counsel.  Filing No. 166.  The defendant filed his inmate request for compassionate release which was never acted on by the Bureau of Prisons.  Filing No. 166.  The government filed a brief in response. Filing No. 171.  The defendant filed a brief in support, Filing No. 179, and an index of evidence, Filing No. 180.

Defendant is serving a 180 month sentence for Conspiracy to Advertise Child Pornography in violation of 18 U.S.C. § 2251(d)(1)(A) & (e).  The offense involved material that portrays sadistic or masochistic conduct or other depictions of violence, and the material involved a prepubescent minor or a minor who had not attained the age of 12

years.  The offense involved 600 or more images.  Upon his release, Cameron will start a 10-year supervised release term.

**DISCUSSION**

The First Step Act amended numerous provisions of the U.S. Code to promote rehabilitation of prisoners and unwind decades of mass incarceration.  Cong. Research Serv., R45558, The First Step Act of 2018: An Overview 1 (2019).  Congress designed the provision at issue here, 18 U.S.C. § 3582(c)(1)(A), for "Increasing the Use and Transparency of Compassionate Release." § 603(b), 132 Stat. at 5239.  Section 3582(c)(1)(A) allows defendants, for the first time, to petition district courts directly for compassionate release.  *Id.*  Compassionate release provides a path for defendants with "extraordinary and compelling reasons" to leave prison early.  § 3582(c)(1)(A)(i).  Such a sentence reduction must comply with the 18 U.S.C. § 3553(a) factors and "applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A).

Pursuant to § 3582(c)(1)(A), a defendant may (after exhausting his or her administrative remedies) move for reduction of his or her term of imprisonment based upon "extraordinary and compelling reasons."  The Court, after considering the factors enumerated in 18 U.S.C. § 3553(a)[1], may grant the motion if extraordinary and compelling

---

[1] The statute states: (1) in any case--
(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
(i) extraordinary and compelling reasons warrant such a reduction; . . .
***** and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.
18 U.S.C. § 3582(c)(1)(A).

reasons warrant the reduction, and such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.[2]  Accordingly, an initial review of the defendant's claim will involve these inquiries:

    1.     Has the defendant exhausted administrative remedies?

    2.     Has the defendant identified extraordinary and compelling reasons for reducing his or her term of imprisonment?

    3.     Would application of the § 3553(a) factors permit reducing the defendant's sentence if those extraordinary and compelling reasons were substantiated?

    4.     Ensure that any reduction is consistent with applicable policy statements.

18 U.S.C. § 3582(c)(1)(A).

Already "tinderboxes for infectious disease," prisons now are even more dangerous than we typically accept.  *United States v. Rodriguez*, No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *1 (E.D. Pa. Apr. 1, 2020).  The Attorney General has directed the BOP to consider increased use of home confinement for at-risk inmates. Memorandum from U.S. Att'y Gen. William Barr to Dir. of Bureau of Prisons (Mar. 26, 2020).

*A. Exhaustion*

The Court finds that the defendant has met the exhaustion requirement.  *See United States v. Brown*, 2020 WL 2091802, at *5 (S.D. Ia. Apr. 29, 2020) ("Defendant . . . satisfied the exhaustion requirement's text and purpose [when] [h]e gave the BOP the first chance to review his circumstances and let thirty days pass before proceeding to

court."). Defendant filed such a motion with the BOP and 30 days have elapsed. *See* Filing No. 166-1.

    *B. Medical Vulnerability*

    Next, the Court finds that defendant's physical and medical vulnerability to COVID-19 may be extraordinary and compelling reasons for a change in defendant's sentence. *See* e.g., U.S.S.G. § 1B1.13 comment. n.1(A)-(C). However, even if the Court construed Cameron's medical conditions as extraordinary and compelling, the Court finds Cameron is a danger to society and not qualified for compassionate release. As Judge Gerrard recently observed in Jenkins, there is currently "no 'applicable' policy statement cabining the Court's discretion to act under § 3582(c)(1)(A)." *United States v. Jenkins*, 2020 WL 2814437, at *3 (D. Neb. May 26, 2020); *see also United States v. Redd*, 2020 WL 1248493, at *5 ( E.D. Va. March 16, 2020) ("there does not currently exist, for the purposes of satisfying the First Step Act's 'consistency' requirement, an 'applicable policy statement.'"); *United States v. Brown*, 411 F. Supp. 3d 446, 449 (S.D. Iowa 2019) (canvassing cases and holding that courts, rather than the outdated policy statements, should determine whether a defendant qualifies for compassionate release); *United States v. Beck*, 425 F. Supp.2d 573, 579 (M.D.N.C. June 28, 2019) ("While the old policy statement provides helpful guidance, it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i).").

    COVID-19 is clearly a global pandemic that presents extraordinary and compelling release for certain prisoners. It is unprecedented. COVID-19 appears to pose a particular risk for individuals with certain existing health conditions. These include a compromised

4

immune system, obesity, heart disease, hypertension, chronic lung disease, diabetes mellitus, and asthma. Groups at Higher Risk for Severe Illness, Ctrs. for Disease Control & Prevention (April 17, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html.

Defendant is 29 years old.  He has at least three of these risk factors.  He argues that he has post-traumatic stress disorder (PTSD), depression and anxiety.  The BOP records indicate that both PTSD and depression are in remission, and he has had no current episodes of either.  Defendant has sarcoidosis (a condition where there is an abnormal collection of inflammatory cells that form aggregates in the lungs, skin, and lymph nodes).  He is also obese.  He is considered a "care level 1 inmate" which means he needs basic chronic care.  He has an albuterol inhaler, as needed, and Mirtazapine (15 MG tab) to be taken at bedtime, a Mometasone Furoate Inhaler, to be used each day. It appears he also has some non-prescription medications.  Mr. Cameron has been tested for COVID-19 on June 9, 2020, June 16, 2020, June 22, 2020, July 15, 2020, August 6, 2020 and August 26, 2020.  All tests returned negative results for COVID-19.

Defendant is currently at FCI Petersburg Medium.  As of January 8, 2021, there are 56 confirmed active positive tests in the inmate population and six staff positive tests.  So far, 191 inmates have recovered, there has been one inmate death and no staff deaths.

*C.  Section 3553(a) Factors*

Finally, the Court must consider if compassionate release comports with any Applicable § 3553(a) factors.  *See also* § 3582(c)(1)(A).  The government argues that the medical factors do not outweigh the seriousness of defendant's criminal history and propensity for young girls and contends that Cameron is a danger to the community.  He

5

actively visited and operated websites on the Tor network, participated in the PedoBook, PedoBoard and TB websites on the Tor network, where he displayed the name "ChildPussy."   "He joined 36 specialized groups where people shared specific interests in the sexual abuse of children and traded child pornography depicting those interests." PSR at § 28.  In January 2015, the United States Attorney's Office for the Northern District of Florida indicated that contraband consisting of 17 graphic drawings of children between the ages of five and seven in sexually explicit poses with adults were found in Cameron's cell.

While incarcerated,

> According to BOP disciplinary records, Mr. Cameron has received several disciplinary reports while in custody. In January 2015, Mr. Cameron received a write up for a minor fight with another inmate. He received a sanction of 27 days loss of good time and 15 days of segregation.  In July 2015, he was involved with tattooing or had knowledge of tattooing paraphernalia. He received 14 days loss of good conduct time and loss of commissary for two months. In December 2015, he received another write up for mailing a three way letter to his mother. He lost 10 days of good conduct time. In August 2016, he was caught lying or making a false statement. He lost commissary for 60 days as a result of this write up. In October 2018, Mr. Cameron was refusing to work or attend his program assignment. He lost 45 days of email privileges. On December 2019, Mr. Cameron was found possession an unauthorized item. He lost email, commissary and visitations for 60 days due to this write up.

Filing No. 169 at 3.

This is evidence that defendant poses a threat to the public.[2]  The Court believes that prison incarceration is necessary "to protect the public from further crimes of the

---

[2] The government argues that defendant is present a danger to the community.  Under 18 U.S.C. § 3142(g), the Court must consider four factors in determining whether the defendant might present a danger for release or detention of a defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g)(1) – (4).

defendant." § 3553(a)(2)(C).  The probation officer points out that Cameron has failed to abide by many of the rules while in prison, and he also declined the sex offender treatment offered to him while in the BOP.  In addition, defendant has admitted to viewing child pornography, attempted to continue to do so while in prison, and failed to properly attempt to rehabilitate himself.  The Court agrees he is still a potential danger to the community. Based on these findings, the Court finds that the § 3553(a) factors militate to denying defendant's compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i).[3]

THEREFORE, for the reasons stated herein, defendant's Motion for Compassionate Release, Filing No. 158 is DENIED.

Dated this 16th day of February, 2021.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge

---

[3] The Middle District of Alabama conducted a release investigation on Mr. Cameron's proposed release address. The proposed location complies with SORNA and was approved by the Alabama investigator, if the Court determined to release him.